# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE MAYS, | Case No. 1:13-cv-00904-SKO |
| Plaintiff, | **ORDER ON PLAINTIFF'S COMPLAINT** |
| v. | (Docket No. 1) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

_____/

## I. INTRODUCTION

Plaintiff Wayne Mays ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income ("SSI") pursuant to Title XVI of the Social Security Act. 42 U.S.C. § 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (Docs. 7,8.)

## II. BACKGROUND

Plaintiff is 48 years old and lives with his son, brother, and nephew. (Administrative Record ("AR"), 226.) Plaintiff finished 10th grade and has no past relevant work. (AR 247.)

### A.  Relevant Medical History

On October 22, 2010, Plaintiff was examined by consulting physician Robert M. Sayad, Ph.D. (AR 147-53.) Dr. Sayad noted Plaintiff was 45 years old, appropriately groomed and casually dressed, cooperative, somewhat tense, and a fair historian. (AR 147.) During Plaintiff's mental status examination, Dr. Sayad noted Plaintiff's generally adequate effort, concrete thought process, distractibility, fluent speech, simple and relevant verbal productions, appropriate affect, anxious and dysphoric mood, somewhat limited fund of knowledge, and fair insight and judgment. (AR 148-49.) Plaintiff alleged being anxious and having low frustration tolerance. (AR 148.) Plaintiff reported a history of learning disability and that he stopped attending school in the 11th grade after taking some special education classes. (AR 148.) Plaintiff had been sober for two years. (AR 148.) Plaintiff wakes at 6:00 or 6:30 in the morning, does chores, watches television, rides his bike, and socializes with his family before retiring for the evening. (AR 149.)

Plaintiff's scores on various tests fell in the low and borderline ranges. (AR 149-50.) Despite these scores, Dr. Sayad opined that Plaintiff "does not appear to be developmentally disabled and [his] concurrent deficits in adaptive functioning, necessary for a diagnosis of mental retardation, were not evident on examination." (AR 150.) Dr. Sayad concluded that borderline intellectual functioning was probable. (AR 150.) Dr. Sayad diagnosed Plaintiff with (1) Anxiety Disorder, not otherwise specified ("NOS"); (2) Depressive Disorder, NOS; (3) Learning Disorder, NOS; (4) Polysubstance Abuse, In Remission; and (5) Borderline Intellectual Functioning ("BIF"). (AR 150.)

Dr. Sayad opined Plaintiff could understand, remember, and carry out very short and simple instructions, and had no significant limitation in his ability to interact appropriately with supervisors. (AR 151.) Dr. Sayad found moderate impairments in Plaintiff's ability to interact

2

with the public or co-workers, maintain attention and concentration, and in responding to usual work situations and changes in a routine work setting. (AR 151.)

On November 17, 2010, K.P. Morris, Psy.D., reviewed the record and noted Plaintiff's variable testing scores, opining that Plaintiff could perform simple tasks with moderate limitations in social functioning. Dr. Morris opined Plaintiff's adaptive functioning was sufficient to make him aware of ordinary hazards, make simple decisions, use transportation, and cope with the demands of a routine work-like environment. (AR 155.)

On November 17, 2010, Disability Determination Service analyst C. Robertson reviewed Plaintiff's medical records. Analyst Robertson opined Plaintiff's test scores suggested he had BIF; however, lacking collateral evidence to support such a diagnosis, a diagnosis of cognitive disorder NOS was most accurate. (AR 170.) Analyst Robertson assessed that Plaintiff's impairments were severe, but did not rise to the level needed to meet or equal a listing pursuant to the Social Security Act. (AR 170.)

On April 27, 2011, Disability Determination Service analyst M. Graciano reviewed Plaintiff's medical records and noted no new allegations or changes to Plaintiff's conditions since his initial screening. (AR 210.) Analyst Graciano opined that Plaintiff's conditions were non-severe. (AR 211.)

On May 25, 2012, Linda Bates, PA-C, completed a questionnaire about Plaintiff. (AR 212.) She opined Plaintiff's primary impairments were hypertension and anxiety, but he had no restrictions or work limitations, and his anxiety was controlled with medications. (AR 212.)

**B.   Administrative Proceedings**

On August 4, 2010, Plaintiff filed an application for SSI alleging disability beginning on January 1, 2008. (AR 90-97.) The Commissioner denied the application initially and again on reconsideration. (AR 55-66.) On June 26, 2012, Plaintiff appeared with counsel at a hearing before an administrative law judge ("ALJ"). (AR 222-54.) In a decision dated July 6, 2012, the ALJ analyzed the record and found that Plaintiff had a residual functional capacity ("RFC")[2] to

---

[2] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. Social Security Ruling 96-8p. The RFC assessment considers only functional limitations and restrictions that result from an

3

perform simple routine tasks in a non-public setting with only occasional interaction with others. (AR 13-24.)  Given Plaintiff's non-exertional limitations, the ALJ called a Vocational Expert ("VE") who testified Plaintiff could perform work as a landscape laborer, night cleaner, and truck driver helper.  (AR 13-24.)

The ALJ found Plaintiff was not disabled, because a significant number of jobs existed in the national economy that that he could perform.  (AR 13-24.)  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review.  (AR 5-8.)  Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g).

### 1.   Plaintiff's Testimony

On June 6, 2012, Plaintiff testified he lives with his son, his brother, and his nephew. (AR 227.)  Plaintiff does not drive, but instead goes out with friends and family.  (AR 227-28.) Plaintiff can make microwaved foods, chili dogs, and sandwiches.  He has done laundry in the past; however, his brother usually does it now because Plaintiff mixed colors and whites.  (AR 245.)  Plaintiff's friends and family help remind him to go to appointments.  (AR 236.)  Plaintiff completed 10th or 11th grade, and has a 3rd or 4th grade reading level.  (AR 228-29.)  He can write his name and small words.  (AR 228.)

Plaintiff testified he cannot work because it is hard for him to be around people and because of his anxiety.  (AR 230.)  He has anxiety attacks, but has not been hospitalized for anxiety and depression.  (AR 237, 243.)  He has trouble sleeping and concentrating.  (AR 242.) Plaintiff has no vocational training, military experience, or work experience.  (AR 229-30.)  He has been in and out of prison repeatedly.  (AR 230.)

### 2.   Vocational Expert Testimony

David Van Winkle testified at the hearing as the VE.  (AR 247-52.)  The ALJ stated that Plaintiff had no past relevant work, and posed several hypotheticals to the VE.  (AR 247.)  The

---

individual's medically determinable impairment or combination of impairments.  *Id.*  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, *inter alia*, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

ALJ asked the VE whether a hypothetical person of Plaintiff's age and education, (1) with no past work experience, (2) who is able to perform at all exertional levels, (3) is limited to simple, routine tasks in a non-public setting, and (4) is limited to only occasional interaction with co-workers, could perform any work. (AR 248.) The VE responded that the hypothetical person could perform unskilled work, and gave the examples of truck driver helper, landscape laborer, and hotel mover/night cleaner. (AR 248.)

In a second hypothetical, the ALJ asked the VE whether a hypothetical person of Plaintiff's age and education, (1) with no past work experience, (2) who is able to perform at all exertional levels, (3) is limited to simple, routine tasks, and (4) is limited in peer and public contact, would be able to perform any work. The VE responded that the hypothetical person could perform the work of landscape laborer and office cleaner. (AR 248-49.)

In a third hypothetical, the ALJ added to the first two hypotheticals the constraint that the person would be off task at least 20 percent of the time due to mental symptoms and asked whether the person could perform any work. The VE responded that the hypothetical person could not perform any work. (AR 250.)

Plaintiff's counsel then asked the VE whether, if the hypothetical person from the second hypothetical were off task for 15 to 20 percent of the time due to impairments with concentration, they could perform any work. The VE responded that they hypothetical person could not perform any work. (AR 251.)

**C.   The ALJ's Decision**

The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). (AR 16-24.) At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since July 20, 2010, the date he filed his application. (AR 18.) At Step Two, the ALJ found Plaintiff had the severe impairments of (1) anxiety disorder, (2) depressive disorder, (3) history of polysubstance abuse, and (4) insomnia. (AR 18.) At Step Three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1 ("the Listings"). 20 CFR §§ 416.920(d), 416.925, and 416.926. (AR 18-19.) The ALJ next determined Plaintiff had

the RFC to perform a full range of work at all exertional levels, but had the non-exertional limitations to simple, routine tasks, in a nonpublic setting, with only occasional interactions with coworkers. (AR 19-20.) Given his RFC, the ALJ determined that, although Plaintiff had no past work, Plaintiff could perform other work existing in significant numbers in the national economy. The ALJ gave the examples of truck driver helper, landscape laborer, and hotel mover/night cleaner. (AR 23-24.)

**D.     Plaintiff's Contention on Appeal**

Plaintiff claims the ALJ erred in considering Dr. Sayad's opinion and in assessing Plaintiff's mental impairments at Step Three of his analysis. (Doc. 19, 6-12.)

### III. SCOPE OF REVIEW

The ALJ's decision denying benefits "will be disturbed only if that decision is not supported by substantial evidence or it is based upon legal error." *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the Commissioner. *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). Instead, the Court must determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. See *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

### IV. APPLICABLE LAW

An individual is considered disabled for purposes of disability benefits if he or she is unable to engage in any substantial, gainful activity by reason of any medically determinable

6

physical or mental impairment that can be expected to result in death or that has lasted, or can be expected to last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also Barnhart v. Thomas*, 540 U.S. 20, 23 (2003). The impairment or impairments must result from anatomical, physiological, or psychological abnormalities that are demonstrable by medically accepted clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial, gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)-(3), 1382c(a)(3)(B), (D).

The regulations provide that the ALJ must undertake a specific five-step sequential analysis in the process of evaluating a disability. In the First Step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If not, in the Second Step, the ALJ must determine whether the claimant has a severe impairment or a combination of impairments significantly limiting her from performing basic work activities. *Id*. §§ 404.1520(c), 416.920(c). If so, in the Third Step, the ALJ must determine whether the claimant has a severe impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. 404, Subpart P, App. 1. *Id*. §§ 404.1520(d), 416.920(d). If not, in the Fourth Step, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work. *Id*. §§ 404.1520(f), 416.920(f). If not, in the Fifth Step, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in significant numbers in the national economy. *Id*. §§ 404.1520(g), 416.920(g). If a claimant is found to be disabled or not disabled at any step in the sequence, there is no need to consider subsequent steps. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. §§ 404.1520, 416.920.

## V.  DISCUSSION

**A.   The ALJ Properly Considered Dr. Sayad's Opinion**

Plaintiff contends the ALJ impermissibly failed to assign weight to Dr. Sayad's opinion,

7

despite adopting much of Dr. Sayad's report in his decision. (Doc. 19, 4.) Additionally, Plaintiff asserts the ALJ did not properly explain why all of Dr. Sayad's limitations were not included in Plaintiff's RFC. The Commissioner responds that the ALJ clearly gave Dr. Sayad's opinion significant weight when determining Plaintiff's RFC.

### 1. Legal Standard

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians), (2) those who examine but do not treat the claimant (examining physicians), and (3) those who neither examine nor treat the claimant (non-examining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). The opinion of a non-examining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1456 (9th Cir. 1984). In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a non-examining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1035, 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995).

### 2. The ALJ's Findings

After examining Plaintiff, Dr. Sayad opined Plaintiff had several limitations, including moderate impairments in his ability to respond to changes in routine work settings and usual work settings, moderate impairments with attention and concentration, and limitations from traveling to places unaccompanied. (AR pp. 21-23, 151.) Despite assessing these limitations, Dr. Sayad opined Plaintiff retained the capacity to understand, carry out, and remember very

short and simple instructions, and that his ability to interact with supervisors was not significantly impaired. (AR pp. 21-23, 151.)

The ALJ discussed Dr. Sayad's opinion in detail in his decision. (AR 21-23.) The ALJ noted Plaintiff's subjective complaints, past drug use and incarceration, and general poor performance on tests with Dr. Sayad. (AR pp. 21, 147-52.) The ALJ discussed that Dr. Sayad's report demonstrated that while Plaintiff's intelligence tests were consistent with borderline to below average range, Plaintiff did not appear to be developmentally disabled because he did not exhibit concurrent deficits in adaptive functioning. (AR 22, 150.)

The ALJ explained that he considered Dr. Sayad's opinion and translated it into a concrete RFC assessment of Plaintiff's capabilities. (AR 19-23.) Specifically, the ALJ limited Plaintiff to simple, routine tasks, which incorporates many of Plaintiff's moderate impairments while retaining the capacity to perform very short and simple tasks, as opined by Dr. Sayad. (AR pp. 19-23, 151.) Similarly, the ALJ found Plaintiff can work in a non-public setting with only occasional interaction with coworkers, which incorporates Dr. Sayad's opinion's moderate impairments with interaction with the public and co-workers, as well as his opinion that Plaintiff was not significantly limited in his ability to interact appropriately with supervisors. (AR pp. 19-23, 151.)

### 3. Analysis and Conclusion

In his Opening Brief, Plaintiff claims the ALJ did not assign any weight to Dr. Sayad's opinion, citing to pages 21 and 22 of the AR. However, the ALJ clearly assigned significant weight to Dr. Sayad's opinion, and explained his reasoning for doing so. (AR 23.) The ALJ explained that he accorded significant weight to Dr. Sayad's opinion because it was consistent with the opinions of the other consulting physician, Dr. Morris, as well as the opinions of the Disability Determination Service consultants, and PA-C Bates. (AR 21-23.)

Plaintiff also asserts the ALJ did not properly explain why all of Dr. Sayad's limitations were not included in Plaintiff's RFC. Contrary to Plaintiff's contention, the ALJ credited Dr. Sayad's opinion and translated it into a concrete RFC assessment: a limitation to simple, repetitive tasks; nonpublic settings; and occasional contact with coworkers. *See Stubbs Danielson*

*v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008).  The ALJ also properly gave weight to the opinion of Dr. Sayad which was supported by the opinions of doctors and the medical evidence in the record.

**B.      The ALJ Properly Considered the Limiting Effects of Plaintiff's Mental Impairments**

Plaintiff asserts the ALJ erred by not discussing Plaintiff's impairments of Learning Disorder and BIF at the Second Step of the sequential evaluation.  (Doc. 19, 5-7.)   Plaintiff contends the ALJ was required to assess the severity of Plaintiff's Learning Disorder and BIF because these conditions were diagnosed by Dr. Sayad and constitute medically determinable impairments.  Because the ALJ ignored the mental impairments, the Court cannot review the ALJ's reasons for not finding these conditions severe in the Second Step.  (Doc. 19, 7.)

The Commissioner responds that the ALJ properly found that Plaintiff met the Step Two requirements by showing at least one severe impairment, and then considered all of Plaintiff's impairments in determining Plaintiff's RFC.  (Doc. 22, 4.)   The Commissioner contends that because the ALJ continued the sequential analysis beyond Step Two and conducted an RFC analysis, even had the ALJ erred, any error was harmless.  (Doc. 22, 5.)

**1.      Legal Standard**

At Step Two, it is the Plaintiff's burden to show that he has a severe medically determinable physical or mental impairment.  *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) ("The claimant first must bear the burden . . . of showing . . . at step two that he has a medically severe impairment or combination of impairments").  After a claimant meets his burden at step two, during the RFC analysis, the ALJ analyzes "the 'combined effect' of *all* the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Howard  v. Barnhart*, 341 F.3d 1006, 1010 (9th Cir. 2003)(emphasis added).

When an ALJ resolves the Second Step in Plaintiff's favor and continues the sequential evaluation, any error in not evaluating Plaintiff's mental impairments at the Second Step is only harmful error if the ALJ fails to properly consider the limitations stemming from Plaintiff's mental impairments at later steps of the analysis. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).  This is so because the ALJ is required to consider *all* limitations, and restrictions imposed

by *all* impairments, even those deemed not severe, at later steps of the sequential evaluation process. SSR 96-8p, 1996 WL 362207, at *34477 (July 2, 1996) (requiring ALJ's RFC assessment to "consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'").

### 2. The ALJ's Findings

At Step Two, the ALJ found that Plaintiff "ha[d] the following severe impairments: anxiety disorder; depressive disorder; history of polysubstance abuse; and insomnia." (AR 18.) The ALJ also found Plaintiff had the non-severe impairments of hypertension, backache, and hyperlipidemia. (AR 18.) Prior to Step Four, the ALJ considered Plaintiff's impairments in developing Plaintiff's RFC, and determined Plaintiff could perform work at all exertional levels, but was limited to simple routine tasks, in a non-public setting, with only occasional interaction with coworkers. (AR 22-24.)

### 3. Analysis

At Step Two, the ALJ determined Plaintiff met the burden of demonstrating he had a severe medically determinable impairment, as evidenced by the ALJ finding Plaintiff "ha[d] the following severe impairments: anxiety disorder; depressive disorder; history of polysubstance abuse; and insomnia." (AR 18.) The ALJ then found that Plaintiff's impairments did not meet or equal any Listing in Step Three. (AR 18.)

Because the ALJ resolved Step Two in Plaintiff's favor and continued the sequential evaluation, any error in not evaluating Plaintiff's mental impairments at the Second Step is only harmful if the ALJ failed to properly consider the limitations stemming from Plaintiff's mental impairments at later steps of the analysis. *Burch*, 400 F.3d at 682. Assuming *arguendo* that the ALJ erred at Step Two by not assessing whether Plaintiff had the impairments of Learning Disorder and BIF based on Dr. Sayad's diagnosis, Plaintiff has not established that such an error was prejudicial. *See Shinseki v. Sanders,* 556 U.S. 396, 409 (2009) (The burden of showing an error is harmful falls on the party attacking an agency's determination.). As discussed below, the ALJ proceeded to develop Plaintiff's RFC and considered all of Plaintiff's limitations in doing so, assigning non-exertional limitations to address Plaintiff's moderate limitations as opined by the

physicians of record. The ALJ's decision demonstrates Plaintiff's RFC is supported by substantial evidence.

In developing Plaintiff's RFC, the ALJ considered Plaintiff's intellectual functioning and any limitations due to Plaintiff's intellectual functioning. The ALJ discussed Plaintiff's performance on various psychological tests, including the Wechsler Adult Intelligence Scale-IV, Bender-Gestalt Test-IT, and Trail Making Test. (AR 22.) The ALJ specifically noted Dr. Sayad's diagnoses of Learning Disorder and history of learning disability, for which Plaintiff participated in Special Education, and Plaintiff's poor test performance. (AR 21-22.) The ALJ noted that Dr. Sayad had concluded Plaintiff was not significantly limited in interacting with supervisors, or from understanding, remembering, and carrying out very short and simple instructions. (AR 22.) The ALJ also reiterated Dr. Sayad's opinion that, despite Plaintiff's poor scores on intelligence tests, Plaintiff did *not* appear developmentally disabled. (AR 22.) In addition, the ALJ explained that Dr. Sayad's examination concluded that Plaintiff did not evidence the concurrent deficits in adaptive function and low test scores necessary to diagnose mental retardation. (AR 22, 150.)

The ALJ also discussed the assessments of Dr. Morris and the disability analysts regarding Plaintiff's intellectual functioning. The ALJ recounted Dr. Morris' opinion that Plaintiff possessed sufficient ability to understand, remember, and complete simple instructions; to follow directions without additional assistance; and to maintain adequate attention, concentration, persistence, and pace to complete a full work day and work week. (AR 20.) The ALJ noted PA-C Bates' opinion that Plaintiff had no restrictions, was able to work, and reported his anxiety symptoms were controlled by medication. (AR 21.)

Plaintiff contends the Court cannot review the ALJ's reasons for excluding BIF and Learning Disorder from his impairments, because the ALJ did not specifically discuss these medically determinable impairments. To the contrary, the ALJ's thorough discussion of Plaintiff's test scores, intellectual functioning, and physicians' opinions and diagnoses allows the Court to understand and review the ALJ's bases for developing Plaintiff's RFC. The ALJ incorporated limitations accommodating Plaintiff's mental conditions as outlined by the medical professionals on the record. The ALJ credited Dr. Sayad, Dr. Moore, and the disability analysts'

opinions that, although Plaintiff had impairments, he "would not be precluded from understanding, remembering, and carrying out very simple instructions." (AR 22.)  The ALJ also noted that although Plaintiff's ability to respond to usual work situations and changes would be "moderately impaired," he would be competent to manage his own funds. (AR 22.)  The Court can draw reasonable inferences from the ALJ's opinion, provided that the ALJ "summarized the facts and . . . clinical evidence in detailed and thorough fashion, stating his interpretation and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).  Here, the ALJ's decision demonstrates he analyzed the physicians' opinions and incorporated non-exertional limitations into Plaintiff's RFC based on those opinions.

In sum, the ALJ did not improperly discredit the opinions of Plaintiff's physicians and err by not makings findings about whether Plaintiff had the impairments of Learning Disorder and BIF, as Plaintiff contends.  To the contrary, the ALJ explicitly credited the physicians' opinions and incorporated their assessments into Plaintiff's RFC, as evidenced by the ALJ's discussion and non-exertional limitations included in Plaintiff's RFC.

In his Reply Brief, Plaintiff contends that because Dr. Sayad opined Plaintiff had limitations in his ability to respond appropriately to work situations and changes in work situations, the ALJ erred by failing to include "low stress jobs" and "quota free environments" in Plaintiff's RFC. (Doc. 23, 4.)  Although '[i]In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment,'" (*Robbins*, 466 F.3d at 883), it is the ALJ's responsibility to provide an interpretation of the facts and conflicting clinical evidence, and make a finding based on that interpretation (*Tommasetti*, 533 F.3d at 1041).

Here, the ALJ's decision demonstrates he evaluated the evidence in the record, and incorporated appropriate limitations into Plaintiff's RFC.  *See* 20 C.F.R. § 404.1545(a)(1) (ALJs are not required to base their RFCs on any one medical opinion; rather they consider the evidence in the record as a whole in formulating the RFC).  Dr. Sayad's opinion of Plaintiff's limitations is encapsulated by the ALJ's limitations; the ALJ is not required to add the made-up limitations

13

asserted by Plaintiff.

The ALJ did not err by not including limitations to low stress jobs and quota free environments in Plaintiff's RFC. The ALJ analyzed the medical records, assigned weight to the medical opinions, and considered the combined effect of *all* of Plaintiff's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. The ALJ then incorporated appropriate limitations into Plaintiff's RFC, as discussed above. The ALJ addressed Plaintiff's moderate limitations as identified in the credited doctors' opinions. The limitations to simple routine tasks, nonpublic settings, and occasional contact with coworkers are supported by the record.

**C.     The ALJ Did Not Err in Assessing Plaintiff's Mental Functions at Step Three**

Plaintiff contends that because the ALJ did not analyze Plaintiff's intellectual impairments properly at Step Two, the ALJ failed to consider these impairments at Step Three. (Doc. 19, 8.) Specifically, Plaintiff claims that because the ALJ did not find Plaintiff had the severe impairment of BIF at Step Two, the ALJ improperly failed to analyze whether he met or equaled listing 12.05(C) for mental retardation. (Doc. 19, 8.) Plaintiff asserts substantial evidence demonstrated he met listing 12.05(C), and the ALJ's failure to consider the listing was harmful error. (Doc. 19, 12.)

The Commissioner responds that Plaintiff failed to meet his burden that he met or equaled listing 12.05(C). (Doc. 22, 5.) Additionally, the Commissioner asserts that Dr. Sayad's report and the ALJ's opinion specifically note Plaintiff was not mentally retarded, due to a lack of concurrent deficits in adaptive function. (Doc. 22, 5.) Further, no evidence exists that Plaintiff has the impairments necessary for meeting 12.05(C) prior to attaining the age of 22, and Plaintiff alleges his disability began in 2008 when he was over 40 years old. (Doc. 22, 6.)

**1.     Legal Standard**

The Listings set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 were "designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). Physical and mental conditions contained in the Listings are considered so severe that "they are irrebuttably presumed disabling, without any specific finding as to the

14

claimant's ability to perform his past relevant work or other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995).

At the Third Step, the ALJ must evaluate the claimant's impairments to determine whether he or she meets or medically equals any of the impairments contained in the Listings; if any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. See 20 C.F.R. § 416.920(d). The plaintiff bears the burden of proving that an impairment or combination of impairments meets or equals all the criteria of a Listing. *Tackett*, 180 F.3d at 1100; *Sullivan*, 493 U.S. at 530-31 ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria . . . For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to all the criteria for the one most similar listed impairment.") (emphasis in original); 20 C.F.R. § 416.925(d) ("impairment(s) cannot meet the criteria of a listing based only on a diagnosis;" impairments must satisfy "all of the criteria in the listing").

The ALJ must consider the relevant evidence in determining whether a claimant's impairment or impairments meet or equal one of the specified impairments set forth in the Listings. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001); 20 C.F.R. § 416.920(a)(4)(iii). Generally, a "boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not [meet or equal a Listing]." Lewis, 236 F.3d at 512; *see also, e.g., Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990) (noting that the ALJ's unexplained finding at step three was reversible error). However, a boilerplate finding may be appropriate where a claimant fails to set forth any evidence for the ALJ to conclude an impairment could meet or equal a listing. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990).

Meeting Listing 12.05 for mental retardation requires a demonstration of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period: i.e., the evidence demonstrates or supports onset of the impairment before age of 22." To meet the criteria for 12.05(C) specifically, Plaintiff must demonstrate all three of the following: (1) significantly subaverage general intellectual functioning

with deficits in adaptive functioning with an onset before age 22; (2) a valid verbal, performance, or full scale IQ of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1011 (D. Or. 2011). Plaintiff is not required to have a diagnosis of mental retardation to satisfy Listing 12.05(C). *See Pedro*, 849 F. Supp. 2d at 1010.

### 2. The ALJ's Findings

In his Step Three analysis, the ALJ specifically considered Listings 12.02 (organic mental disorders), 12.04 (affective disorders), 12.06 (anxiety related disorders), 12.08 (personality disorders), and 12.09 (substance addiction). (AR 18.) In finding Plaintiff's impairments did not meet or equal any of the Listings, the ALJ explained that "the medical evidence does not document listing-level severity, and no medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (AR 18.)

### 3. Analysis

Plaintiff first alleged he met Listing 12.05(C) in his Opening Brief before this Court. (Doc. 19.) In his administrative brief, Plaintiff alleged he met Listing 12.02 (AR 18-19, 219-221), and during Plaintiff's hearing, Plaintiff's counsel asserted "my client is disabled under 12.02 or 12.04, 12.06 alternatively" (AR 252).

Plaintiff contends he meets Listing 12.05(C)'s first requirement ("significantly sub-average general intellectual functioning with deficits in adaptive functioning with an onset before age 22") because the record contains circumstantial evidence demonstrating he was mentally impaired prior to age 22, such as not completing high school and enrollment in Special Education courses. (Doc. 19, 10.) Plaintiff further claims the record shows difficulty in adaptive functioning, as demonstrated by his lack of work history and inability to fill out a job application, in addition to repeated terms in prison. (Doc. 19, 10.) Plaintiff contends he meets the second Listing requirement ("valid verbal, performance, or full scale IQ of 60 to 70") because Dr. Sayad performed the Wechsler Adult Intelligence Scale-IV test and his composite score was 67. (Doc. 19, 11.) Finally, Plaintiff contends he meets the third Listing requirement ("a physical or other mental impairment imposing an additional and significant work-related limitation of function")

16

because the ALJ determined he had the severe mental impairments of anxiety disorder, depressive disorder, history of polysubstance abuse, and insomnia. (Doc. 19, 12.)

While the ALJ did not specifically analyze Listing 12.05(C) at Step two of the sequential analysis, he did make findings that Plaintiff did not have deficits in adaptive functioning ("[Plaintiff] does not appear to be developmentally disabled and concurrent deficits in adaptive functioning, necessary for a diagnosis of mental retardation, were not evident on examination."). (AR 22.) The ALJ's decision and Dr. Sayad's report both specifically note Plaintiff was *not* developmentally disabled given a lack of concurrent deficits in adaptive function. (AR pp. 22, 150.) In light of the medical opinions and the ALJ's analysis that Plaintiff does not lack concurrent adaptive functioning, Plaintiff has failed to demonstrate that he meets the first requirement of listing 12.05(C), that of "significantly sub-average general intellectual functioning with deficits in adaptive functioning with an onset before age 22," because he does not demonstrate deficits in adaptive functioning.

In addition, the Court notes Plaintiff did not raise Listing 12.05 at the administrative level. "[W]hen claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). The Court will only excuse a failure to comply with this rule when necessary to avoid a manifest injustice. This is not the case here because the ALJ analyzed Listings raised by the Plaintiff as well as other Listings, and the ALJ made findings negating the first element of Listing 12.05(C).

Here, Plaintiff fails to meet the first prong of the requirements to meet Listing 12.05(C). In addition, Plaintiff does not demonstrate that manifest injustice excuses the fact that he did not raise Listing 12.05(C) at his administrative hearing. The ALJ did not err by finding Plaintiff's impairments did not meet Listing 12.05(C).

## VI. CONCLUSION AND ORDER

Based on the foregoing, the Court finds the ALJ's decision is supported by substantial evidence of the record as a whole and is based on proper legal standards. Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social

Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Wayne Mays.

IT IS SO ORDERED.

Dated: **July 11, 2014**                              **/s/ Sheila K. Oberto**
                                                       UNITED STATES MAGISTRATE JUDGE